IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACKSON AVENUE SUBS, INC., *et al.*,   )
                                                     )
           Plaintiffs,        )
                                     )    No. 16 C 4697
v.                                )
                                   )    Magistrate Judge Sidney I. Schenkier
407 DEARBORN, LLC, *et al.*,       )
                                   )
          Defendants.     )

## MEMORANDUM OPINION AND ORDER[1]

Plaintiffs Jackson Avenue Subs, Inc. ("JAS"), Feroz Fazal, Iqbal Ali, and Subway Real Estate Corp. ("SREC") (collectively "plaintiffs"), have filed a four-count complaint against Defendants 407 Dearborn, LLC ("407 Dearborn"), Jeffrey A. Silver, and Sidney Ferenc (collectively "defendants"), asserting claims of breach of contract and alter ego liability (doc. # 1-1, Ex. A: Compl.). Presently before the Court is defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc # 17: Defs.' Mot.). For the reasons set forth below, defendants' motion to dismiss is granted in part and denied in part.

I.

We begin with the allegations in the Complaint, which we accept as true for the purposes of the motion. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). This lawsuit stems from defendants' alleged breach of a lease agreement ("the Lease") for failing to return a security deposit, as well as from the alleged breach of a lease termination agreement ("the Termination Agreement") that required defendants to make payments to plaintiffs during a specified period. Because the Complaint attaches as exhibits the Lease and the Termination

---

[1] On May 19, 2016, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (docs. ## 13, 14).

Agreement, we consider both documents as part of the pleadings for the purposes of the motion to dismiss. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009) (holding that it was within the district court's discretion to consider, on a motion to dismiss, documents to which the complaint referred that were concededly authentic and central to the plaintiff's claim).

The Lease, attached to the complaint as Exhibit A, was entered into by SREC and Old Colony Partners Limited Partnership (to which 407 Dearborn is the successor in interest) on January 22, 2003, for a space located at 407 S. Dearborn Street in Chicago, Illinois (Compl. ¶ 12; Ex. A, at 44). The Lease provided that SREC may sublease the premises to a franchisee/licensee for use as a Subway sandwich shop (*Id.* ¶ 13). Mr. Fazal and Mr. Ali were franchisees/licensees who subleased the property, and JAS is the entity that operated the Subway on their behalf (*Id.* ¶¶ 14-15). SREC paid $5,500.00 as a security deposit to 407 Dearborn (*Id.* ¶ 16). Section 4 of the Lease states that "[i]f Tenant shall have fully complied with all of the covenants and conditions of this Lease the amount of the security deposit then held by the Landlord, shall be repaid to Tenant, without interest, within thirty (30) days after the expiration or sooner termination of this Lease" (Compl. Ex. A ¶ 4, at 7).

Plaintiffs allege that the Termination Agreement was entered into on January 31, 2014 "by plaintiffs and defendants" (Compl. ¶ 18). The Termination Agreement, attached to the Complaint as Exhibit B, does not identify Mr. Ferenc as a party to the agreement; Mr. Silver signed the Termination Agreement, but only in his capacity as Escrowee (Compl. Ex. B, at 8).

Section 3 of the Termination Agreement provides that upon the Termination Agreement date, plaintiffs would vacate the premises and 407 Dearborn would compensate plaintiffs for a period of time called the "Go Dark Period" (Compl. ¶ 19). The Go Dark Period and payments would terminate upon the occurrence of specific events related to the building being fit for

2

resumption of operation of a Subway restaurant, a new lease being entered into with the new owner, and the health department issuing final approval (Compl. Ex. B ¶ 3, at 2-3). The Termination Agreement provided that 407 Dearborn would compensate "Subway®" in the amount of $3,150.00 per month and "Fazal/Ali" in the amount of $5,000.00 per month during the Go Dark Period (*Id.*). Paragraph 3 of the Termination Agreement included a "note" specifying that the payments to Mr. Fazal and Mr. Ali would be made from an escrow account held by Mr. Silver as Escrowee, which was to be funded with $90,000.00 deposited by 407 Dearborn upon the sale of the property that was subject to the Termination Agreement (*Id.*). Although the Complaint alleges that the escrow account shall cover "payments owed described in Section 3 of the Termination Agreement," which would include both the payments to SREC and to Mr. Fazal and Mr. Ali (Compl. ¶ 23), the note in the Termination Agreement states that funds in the escrow account would be disbursed to cover the payments due under paragraph 3(b), which is the paragraph describing the payments to Mr. Fazal and Mr. Ali (Comp. Ex. B ¶ 3(b), at 3). The Termination Agreement does not state that funds in the escrow account would be disbursed to SREC to satisfy the payments it was due to recover, pursuant to paragraph 3(a), during the Go Dark Period.

Plaintiffs allege that the events ending the Go Dark Period have not yet occurred and that as of the filing of the Complaint on March 30, 2016, payments under the Termination Agreement are owed to SREC in the amount of $31,500.00, and to Mr. Fazal, Mr. Ali, and JAS in the amount of $55,000.00 (Compl. ¶¶ 25-26). Plaintiffs also allege that the $5,500.00 security deposit was never returned, in violation of the Lease (*Id.* ¶¶ 27-28). Thus, plaintiffs allege they are owed a total of $92,000.00 as of March 31, 2016 (*Id.* ¶ 31).

3

## II.

Plaintiffs have sued defendants on four grounds: two breach of contract claims against 407 Dearborn for failing to make the required payments under the Termination Agreement and for failing to return the security deposit; a breach of contract claim against Mr. Silver as Escrowee; and an alter ego claim against Mr. Ferenc as director, officer, and/or owner of 407 Dearborn, which seeks to pierce the corporate veil and hold him personally liable for the payments allegedly required of 407 Dearborn (Compl. ¶¶ 32-59). The parties agree, and both the Lease (Compl. Ex. A ¶ 45.4, at 34) and the Termination Agreement (*Id.* Ex. B ¶ 11(b), at 5) provide, that Illinois law applies.

"In reviewing the sufficiency of a complaint, we must accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). To determine if plaintiffs' allegations are sufficient to state a claim, we must determine if they both give the defendants notice of the claims to which they must respond and make the asserted claims "plausible on [their] face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Agnew*, 683, F.3d at 334 ("The Federal Rules of Civil Procedure require only that a complaint provide the defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests'"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barnett v. Webster*, 658 F.3d 742, 752 (7th Cir.2011) (citing *Iqbal*, 556 U.S. at 678).

**A.**

In Count I, plaintiffs claim that SREC is entitled to $3,150.00 per month and Mr. Ali, Mr. Fazal, and JAS collectively are entitled to $5,000.00 per month under the Termination Agreement (Compl. ¶¶ 33-34). Plaintiffs allege the events that would terminate the payment obligations have not occurred (*Id.* ¶ 35).

Defendants argue that Count I should be dismissed, apparently in its entirety, because it improperly includes JAS among the plaintiffs to whom payment is due, when in fact Paragraph 3 of the Termination Agreement does not identify JAS as an entity entitled to any payments (Defs.' Mot. at 2). Defendants' argument is not framed clearly; while in one passage the motion says Count I should be dismissed, two sentences later, defendants appear to narrow their request to seeking dismissal only of "[a]ll claims purportedly brought by or on behalf of JAS . . . ." (*Id.*). In any event, there is no basis to dismiss a claim by SREC, Mr. Ali, and Mr. Fazal simply because a plaintiff who did not share that claim improperly attempted to tag along. We deny the motion to dismiss Count I insofar as it seeks dismissal of the claims by plaintiffs other than JAS.

We thus focus on the assertion that JAS is not a proper plaintiff in Count I. Plaintiffs argue that JAS is entitled to recovery for breach of the Termination Agreement because the opening paragraph of that document refers to Mr. Fazal and Mr. Ali as individuals who were doing business as Fazal Development Network and JAS (doc. # 21: Pls.' Resp. at 3). We disagree.

The provisions of the Termination Agreement at this point are clear. The introductory paragraph lists the parties entering the Agreement: 407 Dearborn as the Landlord, and the other contracting parties as SREC, and "FEROZ FAZAL, an individual ('Fazal'), IQBAL ALI, an individual ('Ali') doing business as Fazal Development Network and JACKSON AVENUE

5

SUBS, INC." (Compl. Ex. B, at 1). The introductory paragraph also states that the Termination Agreement sometime refers to SREC, Fazal, Ali, and JAS together as the "Subway® Parties" (*Id.*). The section regarding the Go Dark Payment reiterates that the "Subway Parties" will vacate the premises, but then specifically describes payments running only to SREC, Mr. Fazal, and Mr. Ali (*Id.* ¶ 3, at 2-3). The Termination Agreement does not specify any payments to JAS under the Go Dark Period provisions.

Illinois follows the "four corners rule" for contract interpretation, which presumes "the document speaks for itself and the intentions of the parties must be determined from the language they have used in drafting the agreement." *Continental Cas. Co. v. MidStates Reinsurance Corp.*, 24 N.E.3d 122, 126 (Ill. App. Ct., 1st Dist. 2014) (citing *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999)). While Count I claims breach of contract against 407 Dearborn for failing to make Go Dark Period payments to SREC, Mr. Ali, Mr. Fazal, and JAS, JAS was not included in the Termination Agreement as a party to which 407 Dearborn must make payments during the Go Dark Period (Compl. Ex. B ¶ 3, at 2-3). Therefore, Count I must be dismissed as to JAS because it fails the plausibility test that requires a plaintiff to plead facts allowing a court to draw the reasonable inference that a defendant is liable for the misconduct alleged. This dismissal is with prejudice. *Tribble v. Evangelides*, 670 F.3d 753, 761 (7th Cir. 2012) ("District courts have broad discretion to deny leave to amend . . . where the amendment would be futile").

### B.

In Count II, plaintiffs claim that SREC is entitled to the return of its security deposit in the amount of $5,500.00 (Compl. ¶ 41). Paragraph 4 of the Lease states that "[i]f Tenant shall have fully complied with all of the covenants and conditions of this Lease the amount of the

6

security deposit then held by Landlord, shall be repaid to Tenant, without interest, within thirty (30) days after the expiration or sooner termination of this Lease" (Compl. Ex. A ¶ 4, at 7). Plaintiffs allege that SREC performed its obligations under the contract, and it was therefore owed the money within 30 days after signing the Termination Agreement, which constituted a "sooner termination" of the Lease (*Id.* ¶¶ 41-42). As further support for their argument, plaintiffs allege that "[i]t is the understanding of the Plaintiffs and Defendants that the Security Deposit would be returned to the Plaintiffs after the signing of the Termination Agreement" (*Id.* ¶ 44).

Defendants argue Count II should be dismissed because SREC released any claim for its security deposit in paragraph 5 of the Termination Agreement, which states:

> <u>Subway Parties' Release</u>. Subway Parties, their assigns, agents, heirs, spouses, beneficiaries, trustees, attorneys, accountants, insurers, executors, administrators and any person claiming by or through them in any capacity (the "Subway Parties Releasors") waive and release Landlord, its subsidiaries, successors in interest, assigns, trustees, managers, members, officers, directors, insurers, fiduciaries, employees, attorneys, agents and any person claiming by or through each or all of them in their corporate, individual and all other capacities (the "407 Dearborn Releases") from any and all claims, demands, causes of action, obligations, costs, attorney fees, interest, damages or liabilities with respect to the Lease Agreement and/or Option. PROVIDED however, that the provisions of this paragraph do not extend nor apply to or in any way limit any rights or obligations under or to enforce this Agreement nor any provision thereof.

(Defs.' Mot. at 2-3; Compl. Ex. B ¶ 5, at 4). Plaintiffs respond that if the Lease was terminated for any reason, then the security deposit was to be returned. Plaintiffs argue that because the Termination Agreement by definition terminated the Lease, the return of the security deposit was required (Pls.' Resp. at 3-4). Plaintiffs also argue this issue turns on the intentions of the parties, and that the failure of the parties to specifically address in the Termination Agreement the disposition of the security deposit was a mutual mistake (*Id.* at 4). Thus, if the Court deems Count II insufficient as pled, plaintiffs seek leave to amend their complaint (*Id.*). Defendants

7

reply that Claim II fails to allege mutual mistake, does not seek a reformation of the Termination Agreement, and should be dismissed (Defs.' Reply at 2).

Elaboration of this Court's previous discussion of the four corners rule is helpful here:

> [W]e follow the "four corners" approach, presuming the document speaks for itself and the intentions of the parties must be determined from the language they have used in drafting the agreement. An ambiguity does not exist in a contract simply because the parties disagree on the meaning of a provision, but when the contract contains language susceptible to more than one reasonable interpretation. Only then may extrinsic evidence be considered to establish the intent of the parties.

*Continental Cas. Co.*, 24 N.E.3d at 126 (citations omitted). The Lease states that if the tenant has fully complied with all covenants and conditions of the Lease, the amount of the security deposit held by the landlord shall be repaid within 30 days after the expiration or sooner termination of the Lease (Compl. Ex. A ¶ 4, at 7). However, in the Termination Agreement, the Subway Parties explicitly released 407 Dearborn from "any and all claims, demands, causes of action, obligations, costs, attorney fees, interest, damages, or liabilities with respect to the Lease Agreement and/or Option" (Compl. Ex. B, at 4). Due to the absence of explicit language in the Termination Agreement governing the security deposit, as written this release modified and superseded the Lease regarding the obligations surrounding the security deposit. *Large v. Mobile Tool Intern., Inc.*, 724 F.3d 766, 772 (7th Cir. 2013) ("Parties are free to abrogate, change, modify, or substitute a primary contract with their mutual assent; in such a case, the original contract will remain in force, except to the extent modified by any new agreement").

As for plaintiffs' suggestion that this is a case of mutual mistake, that is not the claim they have pled. We will not allow plaintiffs to amend the complaint by way of a brief on a motion. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 347-48 (7th Cir. 2012) (citing *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989)). That said, we note that generally

"a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed. We have said this repeatedly." *Runnion ex rel Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*, 786 F.3d 510, 519 (7th Cir. 2015) (collecting cases). Plaintiffs further requested in their response to be allowed to amend their complaint if a pleading issue existed, which the Seventh Circuit has previously allowed. *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible"); *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). So, we will give Plaintiffs an opportunity to replead Count II, if they believe they can do so with factual allegations making the claim plausible and consistent with their obligations under Rule 11.

### C.

In Count III, plaintiffs claim that Mr. Silver, as Escrowee, is liable for breach of contract for failing disburse the funds allegedly due under the Termination Agreement in the amount of $86,500.00 as of March 31, 2016 (Compl. ¶¶ 47-56). As with Count I, defendants argue that Count III should be dismissed because it does not properly allege that defendants breached a duty owed to JAS. For the reasons stated above, we agree that JAS is not a proper party in Count III. The motion to dismiss is granted with prejudice as to any claim made by JAS in Count III.

As for the remaining plaintiffs, defendants' principal argument is that Count III should be dismissed because it lacks the critical allegation that 407 Dearborn deposited funds in the escrow account as required by the Termination Agreement (Defs.' Mot. at 4). Defendants assert that Mr. Silver did not receive the $90,000.00 deposit 407 Dearborn was supposed to place into the escrow account (*Id.*). Plaintiffs argue Count III meets the minimum pleading requirements,

9

because they had no way of knowing whether the escrow account was funded and Mr. Silver can assert the funding failure as a defense and/or counterclaim (Pls.' Resp. at 4-5).

The allegations of a complaint will pass muster only if they *both* give the defendants notice of the claims to which they must respond *and* make the asserted claims "plausible on [their] face." *Ashcroft*, 556 U.S. at 678. Facial plausibility exists if a court is able to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Barnett*, 658 F.3d at 752. In order to meet these requirements, plaintiffs were required to allege in their pleadings that Mr. Silver had a requirement to distribute funds that were actually deposited with him in escrow, and that he failed in performing that requirement, thus breaching his duty under the contract. Mr. Silver had no contractual obligation to personally fund the escrow account. 407 Dearborn's deposit thus was an antecedent to any duty by Mr. Silver under the contract.

Plaintiffs' pleadings, however, include no such allegations. Instead, plaintiffs simply re-alleged paragraphs 22 and 23 as part of Count III, which recite that the Termination Agreement required 407 Dearborn to deposit $90,000.00 in the Go Dark Period escrow account for disbursement by Mr. Silver, and that Mr. Silver failed to disburse the funds (Compl. ¶¶ 22, 23, 47, 53-54). Without an allegation that 407 Dearborn deposited the $90,000.00 in escrow with Mr. Silver, a claim against Mr. Silver for breach of contract is not plausible because it is missing a critical allegation upon which Mr. Silver's potential liability rests. Thus, we grant defendants' motion to dismiss Count III. While defendants have asserted in their briefing that 407 Dearborn never deposited the required $90,000.00 in escrow with Mr. Silver, thereby failing to trigger his duties to disburse funds under the Termination Agreement, plaintiffs have not had the opportunity to test that unsworn assertion in discovery. Thus, our dismissal of Count III is

without prejudice to plaintiffs seeking leave to reassert that claim if discovery shows that funds were deposited in the escrow account.

### D.

In Count IV, plaintiffs claim that 407 Dearborn is an undercapitalized alter ego of Mr. Ferenc and it is unable to satisfy its liabilities (Compl. ¶ 58). Plaintiffs seek to pierce the corporate veil and hold Mr. Ferenc personally liable for the amount due on the alleged breach of contract claim (*Id.* ¶ 59).

Defendants argue that the Complaint does not allege any harm or disadvantage to plaintiffs by the defendants' alleged misuse of the corporate form (Defs.' Mot. at 4-5). Defendants also argue that the alter ego claim is premature, because if plaintiffs are unable to recover a judgment from the defendants, plaintiffs are able to bring a new claim to pierce the corporate veil (*Id.* at 5). Plaintiffs counter that their allegations that they have not received payments under the Termination Agreement due to undercapitalization of 407 Dearborn constitute sufficient allegations of misuse of the corporate form, allowing them to pierce the corporate veil and to sue Mr. Ferenc on an alter ego theory (Pls.' Resp. at 5).

Under Illinois law, "a corporation is presumed to be 'separate and distinct from its officers, shareholders, and directors, and those parties will not be held personally liable for the corporation's debts and obligations.'" *Source One Global Partners, LLC v. KCK Synergize, Inc.*, No. 08 C 7403, 2009 WL 2192791, * 3 (N.D. Ill. July 21, 2009) (quotations and citations omitted). "Piercing the corporate veil is not favored," and as a result, "a party bringing a veil-piercing claim bears the burden of showing that the corporation is in fact a 'dummy or sham' for another person or entity." *Id.* (omitting quotations and citations). Veil-piercing on an alter ego theory is permitted only "when two separate prongs are met: (1) there must be such unity of

interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Wachovia Secs., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751-52 (7th Cir. 2012); *Int'l Fin. Servs. Corp. v. Chromas Technologies Canada, Inc.*, 356 F.3d 731, 737 (7th Cir. 2004). This requires "something less than an affirmative showing of fraud, but something more than the mere prospect of an unsatisfied judgment." *Id.* at 756 (internal quotations omitted).

At the threshold, we do not accept the proposition advanced by defendants that an alter ego claim can only be brought after liability already has been established in an underlying cause of action or claim. We agree that because the alter ego doctrine is not a cause of action in and of itself but instead is a remedy, a plaintiff must establish liability in an underlying cause of action as the predicate for obtaining that remedy. *Buckley v. Abuzir*, 8 N.E.3d 1166, 1169 (Ill App, 1st Dist. 2014); *see also Conopco, Inc. v. S.K. Foods*, No. 98 C 1882, 1999 WL 965554, at *3 (N.D. Ill. Sep. 30, 1999). And, it is true that courts have frequently addressed veil-piercing claims where the underlying cause of action is a judgment entered in a previous case. See *e.g.*, *Wachovia* 674 F.3d at 751-52; *Int'l Fin. Servs. Corp.*, 356 F.3d at 737; *Buckley*, 8 N.E.3d at 1169; *Peetoom*, 778 N.E.2d at 296-97. However, the fact that alter ego claims often are asserted in a separate action than the one in which liability on the underlying cause of action has been established does not mean that an alter ego claim must be filed in a separate action. There is ample authority that an alter ego claim can be brought in the same complaint in which the underlying cause of action is asserted. *See, e.g., GoHealth, LLC v. Simpson*, No. 13 C 02334, 2013 WL 6183024, at *6 (N.D. Ill. Sept. 17, 2014) ("So yes, there is no independent legal cause of action for veil piercing, but veil piercing is still an equitable remedy for a specific theory of

12

personal liability); *Laborers' Pension Fund v. Lake City Janitorial, Inc.,* 758 F. Supp. 2d 607, 618-620 (N.D. Ill. 2010) (denying motion to dismiss alter ego claim brought in the same complaint which plead the underlying cause of action for which alter ego liability was sought).

However, plaintiffs have failed to plead allegations sufficient to state a plausible claim that Mr. Ferenc should be held liable for any damages caused by 407 Dearborn. Plaintiffs conclusorily allege that "[u]pon information and belief, Defendant Ferenc is an officer, director, manager-member and/or owner of 407. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the practices of 407, including the acts and practices set forth in this Complaint" (Compl. ¶¶ 8, 57). These allegations are not even as robust as the ones the Court found insufficient to state an alter ego claim in *Source One*.

The only additional veil-piercing allegation is the equally conclusory assertion that 407 Dearborn is undercapitalized to satisfy its current liabilities (*Id.* ¶ 58.) Plaintiffs seek to flesh out that bare assertion by pointing to the defendants' statement in the briefing that 407 Dearborn never funded the escrow account. However, the failure to fulfill a contractual obligation does not alone imply a financial inability to meet that obligation. Moreover, even if plaintiffs' assertion of undercapitalization were not conclusory, standing alone it would not support a claim to pierce the corporate veil. In determining whether there is such a unity of interest and ownership that piercing the corporate veil may be merited, undercapitalization is just one of many factors the court must consider, and courts generally will not rest a decision on a single factor. *Fontana v. TLD Builders, Inc.,* 840 N.E.2d 767, 778 (Ill. App. Ct., 2nd Dist. 2005) (factors include inadequate capitalization, failure to issue stock, failure to observe corporate formalities, nonpayment of dividends, insolvency of the debtor corporation, nonfunctioning of the other

officers or directors, absence of corporate records, commingling of funds, diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors, failure to maintain arm's-length relationships among related entities, and whether, in fact, the corporation is a mere façade from the operation of the dominant stockholders).

Finally, plaintiffs fail to offer allegations sufficient to plead the second prong needed to assert an alter ego theory: that adherence to the fiction of a separate corporate existence would promote injustice or inequitable circumstances. As we have explained, the allegation of undercapitalization falls far short of the mark. The "promote injustice" test requires more than the prospect of an unsatisfied judgment. *Sea-Land Services, Inc. v. Pepper Source*, 941 F.2d 519-522-23 (7th Cir. 1991).

Therefore, we dismiss Count IV, but without prejudice.

## CONCLUSION

Based on the foregoing analysis, defendants' motion to dismiss (doc. # 17) is granted in part and denied in part. Defendants' motion is: (1) granted without prejudice as to Counts II and IV; (2) granted with prejudice as to the claims brought by JAS in Counts I and III; (3) granted without prejudice as to the claims by SREC, Mr. Fazal, and Mr. Ali in Count III; and (4) is denied as to the claims by SREC, Mr. Fazal, and Mr. Ali in Count I. The answer by 407 Dearborn, the only remaining defendant, is due by September 23, 2016.

ENTER:

/s/ Sidney I. Schenkier

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: September 6, 2016